```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____
MANUEL N. PEREZ,
                             Plaintiff,        07-CV-0452-C

v.                                             DECISION
                                                and ORDER
MICHAEL ASTRUE,
Commissioner of Social Security,
                             Defendant.
_____
```

INTRODUCTION

Plaintiff, Manuel N. Perez("Perez") filed this action pursuant to the Social Security Act, codified at 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking review of a final decision of the Commissioner of Social Security ("Commissioner"), denying his application for Disability Insurance Benefits ("Disability"), and Supplemental Security Insurance ("SSI"). On March 4, 2008, the Commissioner moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure and on April 7, 2008, plaintiff cross-moved for judgment on the pleadings.

For the reasons that follow, I find that substantial evidence supports the decision of the ALJ. Accordingly, plaintiff's motion for judgment on the pleadings is denied and defendant's motion for judgment on the pleadings is granted.

BACKGROUND

Plaintiff is a 41 year old man with a twelfth grade education. (Tr. 34, 181) On August 10, 2004, Perez filed an application for Disability and SSI alleging that he has been disabled since January 12, 2004 because of a gunshot wound to his face and a cyst

in his left hand. (Tr. 34, 50) His application was denied initially on October 18, 2004. (Tr. 28-30) Plaintiff requested a hearing which was held on January 26, 2006 at which plaintiff appeared before an Administrative Law Judge ("ALJ") and was represented by counsel. (Tr. 176-192) By decision dated February 21, 2006, the ALJ found Perez was not disabled. (Tr. 16-20) Plaintiff requested review by the Appeals Council. The decision of the ALJ became final when the Appeals Council denied review on June 1, 2007. (Tr. 4-6) Plaintiff commenced this action on July 12, 2007 claiming that he was disabled by a gunshot wound to the face, right sided facial pain, headaches, left hand pain due to a ganglion cyst, neck and low back pain.

A. <u>Medical Background</u>On January 12, 2004, plaintiff was shot in the face at close range and sought medical care in an emergency room. (Tr. 81) Initially, plaintiff experienced swelling and pain in the face. (Tr. 87) Imaging revealed no gross fracture or dislocation of the mandible, no evidence of prevertebral or focal soft tissue swelling, and no fracture of bony thorax nor any metallic foreign bodies in his chest. (Tr. 92)

At a follow-up examinations on June 21, 2004 and July 21, 2004, Perez complained of sharp pain especially at the right side of the face near the exit wound. (Tr. 98, 100) After images showed bullet fragments within the subcutaneous tissues of both cheeks, Dr. Kassiotis of the Kaleida Health Outpatient Clinic concluded that it was "most likely neuropathic pain due to the (bullet)

fragments." (Tr. 99, 105) Perez was prescribed Lortab for pain and directed to return for a follow up examination in two to three months. (Tr. 103-104)

At the time of plaintiff's application for disability on August 22, 2004, Perez claimed that he experienced dizziness, sharp pains emanating from his lower jaw to his head and that he suffered from blurred vision. (Tr. 67) He was taking Naproxin and Amitriptyline for the chronic pain. (Tr. 54, 68)

On October 7, 2004, Perez was treated at the Kaleida clinic for continued headaches. (Tr. 130) He stated that Elavil worked well for most headaches but occasionally he required more relief and requested a refill for Lortab. (Tr. 130) Plaintiff was prescribed both Elavil and Lortab and directed to follow up with a neurologist. (Tr. 131)

An independent medical examination was performed on October 8, 2004 by Dr. Fenwei Meng. (Tr. 107-110) Dr. Meng noted that plaintiff suffered a gunshot wound to the face which passed through the left cheek, straight through the mouth causing some tooth damage, and out the right cheek. (Tr. 107) Plaintiff complained of pain in the face on the right side that shoots down to the hand. (Tr. 107) Further, Perez reported that the pain causes him dizziness and blurred vision. (Tr. 107) Dr. Meng also noted that plaintiff had a ganglion cyst on his left hand. At that time, plaintiff was taking Lortab, Elavil and Naprosyn. (Tr. 107) The medical examination revealed no abnormal findings except for the

wound on the face and the left hand ganglion cyst. (Tr. 109) Specifically, Dr. Meng identified full flexion, extension, lateral flexion, and full rotary movement in the thoracic spine. He concluded that plaintiff had no limitations of speech, hearing, vision, nor impairments of his cervical and lumbar spine. (Tr. 109) Regarding his lower extremities, there were no limitations for walking, standing nor for use of stairs. There was some limitation noted with dexterity and gross activities of the upper extremities. (Tr. 109)

A Physical Residual Functional Capacity Assessment completed on October 15, 2004 found that plaintiff's claim of disability was not credible because plaintiff's report of daily activities was "not indicative of any significant activity restrictions." (Tr. 115) Plaintiff's impairment was not found to be severe. (Tr. 115)

On December 12, 2004, plaintiff sought treatment from the Kaleida Health Clinic for persistent headaches, cough and sinus congestion. (Tr. 132) Medical notes indicate that plaintiff did not follow through with the referral to see a neurologist but he did request a refill for Lortab. (Tr. 132) Perez was prescribed Lortab and antibiotics as well as referred to Dent Neurologic Group. (Tr. 133)

Plaintiff sought treatment on January 5, 2005 for a ganglion cyst on his left wrist. (Tr. 137) Excision was scheduled for its removal. (Tr. 137) On April 21, 2005, plaintiff was treated for

left wrist pain and headaches. (Tr. 142)  Perez reported that he was able to control headaches with "Excedrin Migraine". (Tr. 142)

On August 5, 2005, Perez was treated at the Kaleida Clinic as a follow up visit from a motor vehicle accident the day earlier. (Tr. 119)  Perez complained of chronic back and head pain. (Tr. 119)  Upon examination, the medical notes indicated that the clinical findings were not consistent with a musculo-skeletal injury and the treating physician questioned whether there was "symptom magnification." (Tr. 120)  Perez was again examined two weeks later for continued back pain and a refill of the Lortab prescription. (Tr. 121)  He was given a refill of the prescription but directed to also start physical therapy. (Tr. 122)

Perez began physical therapy on August 22, 2005 for treatment of lower back pain resulting from the motor vehicle accident. (Tr. 154)  He kept 21 appointments up to November 17, 2005 at which time plaintiff reported a marked decrease in lower back pain symptoms. (Tr. 154)  At worst, plaintiff experienced a pain level of 6 out of ten and a zero out of ten at best.  Pain was aggravated by forward flexion activities and had a sitting tolerance for more than two hours.  (Tr. 154)  The goals of left side range of motion and front mobility were achieved.

On September 12, 2005, plaintiff again was treated at the Kaleida clinic for persistent low back pain.  Perez indicated that he experienced "sharp disabling low back pain on any bending." (Tr. 123)  The examination revealed that Perez had a stable,

symmetric gait, a full range of motion and x-rays showed no disc injury. (Tr. 123-124) Again, the doctor suggested that these were subjective symptoms and that the absence of findings "suggests symptom magnification." (Tr. 124)

In October, 2005, plaintiff was treated for headaches. He indicated that they have increased over the past six months and that Lortab was the only effective treatment. (Tr. 125)

On April 4, 2006, plaintiff had an MRI performed in response to his complaints of lower back pain. (Tr. 168) Neither fractures nor dislocations were seen. At L2-3 "mild bilateral posterolateral disc bulges" were seen as well as "minimal posterolateral disc bulges bilaterally" at L3-4. (Tr. 169) In addition, the images showed "mild diffuse right posterolateral disc bulge mildly encroach on the right neural foramen with questionable mild effacement of the exiting right L4 nerve root" at L4-5 and "mild broad based far left posterior disc protrusion mildly impinging on the traversing left S1 nerve root" at L5-S1. (Tr. 169)

On May 16, 2006, Dr. Ziad Khatib completed a form entitled "Physical Capacities Evaluation" for plaintiff in which he indicated that plaintiff could sit only one half hour at a time, could not stand or walk at all in an eight hour work day. (Tr. 171) In addition, Dr. Khatib indicated that plaintiff could never lift or carry any amount of weight. (Tr. 171) Dr. Khatib concluded that plaintiff could not bend, squat, crawl, climb, reach nor use feet for repetitive movements. He did allow that plaintiff could

perform simple grasping but not pushing, pulling nor fine hand manipulations.  Dr. Khatib concluded that plaintiff's pain and medications would frequently significantly impair or preclude performance of even simple work tasks and that plaintiff needed to lie down for more than six hours during an eight hour work day. (Tr. 172)  Dr. Khatib concluded that plaintiff "cannot work due to back injury and psychological problems."  Further, he stated that "all information obtained through patient interview and his answers were used in filling the form." (Tr. 172)

Similarly, Judy Wagner, MA, CRC, completed a "Medical Assessment of Ability to Do Work-Related Activities" on May 11, 2006. (Tr. 173-175)  She indicated that plaintiff had "good" ability to follow work rules, interact with supervisor, and maintain attention and concentration.  She found Perez to have "fair" ability to relate to co-workers, deal with the public and use judgment. (Tr. 173)  These opinions were not based on observing plaintiff in a work setting but rather based on observations during individual counseling and client's report. (Tr. 173)  Similarly, Ms. Wagner assessed plaintiff to have a fair ability to understand, remember and carry out complex job instructions, understand, remember and carry out detailed but not complex job instructions and a good ability to understand remember and carry out simple job instructions. (Tr. 174)  Ms. Wagner also found plaintiff to have good ability to maintain personal appearance and behave in an emotionally stable manner.  She did note that he needed reminders

to not miss appointments. (Tr. 174)  Ms. Wagner concluded that plaintiff "would have difficulty in any work setting at this time." (Tr. 174)

B.   Non-Medical Background

Perez completed the 12th grade of high school. (Tr. 56)  He worked for temporary agencies from 1982 through 1996 working as a laborer and as a machine operator for a lumber company from March, 2003 through June, 2006. (Tr. 51)  As part of his work for the lumber company, Perez would frequently lift 25 pounds of wood and on occasion 100 pounds. (Tr. 52)

Perez has two children that do not live with him.  At the time of the hearing, he lived with a woman who was working full time. (Tr. 182).  Plaintiff was in jail for six years and on parole for two and a half years, until June, 2005 based on conviction of charges of possession of a controlled substance. (Tr. 183-184) Plaintiff was receiving public assistance until December 2005 when it was discontinued because he had not complied with his requirement to enter either a substance abuse or psychological treatment program. (Tr. 183)

Plaintiff completed a New York State Disability Assistance form on August 22, 2004 in which Perez noted that he was able to prepare table food and would spend approximately one and a half hours each day preparing food. (Tr. 65)  He was able to drive a car and could shop for personal necessities. (Tr. 66)

Perez testified that he could not work because he felt groggy and dizzy and he was always in pain. (Tr. 185) He claims that after standing 15 minutes, he needed to sit due to dizziness. (Tr. 185) In addition, he identified that his lower back caused pain when he sat for a half hour or more. (Tr. 186) Perez also testified that he suffered from headaches on a daily basis. (Tr. 187) He claimed that he could not do any cooking, cleaning, shopping nor laundry but that he did try to do the dishes. (Tr. 190)

DISCUSSION

Pursuant to 42 U.S.C.§ 405(g), the factual findings of the Commissioner are conclusive when they are supported by substantial evidence. Rivera v. Harris, 623 F.2d 212, 216 (2d Cir. 1980). A disability is defined as

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). An individual's physical or mental impairment is not disabling under the Act unless it is:

> of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.

42 U.S.C. §§ 423(d)(2)(A), 1383(a)(3)(B). Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982).

In evaluating disability claims, the Commissioner is required to use the five step process promulgated in 20 C.F.R. §§ 404.1520 and 416.920. First, the Commissioner must determine whether the claimant is engaged in any substantial gainful activity. Second, if the claimant is not so engaged, the Commissioner must determine whether the claimant has a "severe impairment" which significantly limits his ability to work. Third, if the claimant does suffer such an impairment, the Commissioner must determine whether it corresponds with one of the conditions presumed to be a disability by the Social Security Commission. If it does, then no further inquiry is made as to age, education or experience and the claimant is presumed to be disabled. If the impairment is not the equivalent of a condition on the list, the fourth inquiry is whether the claimant is nevertheless able to perform his past work. If he is not, the fifth and final inquiry is whether the claimant can perform any other work. The burden of proving the first four elements is on the claimant, while the burden of proving the fifth element is on the Commissioner. Bush v. Shalala, 94 F.3d 40, 44-45 (2d Cir. 1996).

Here, the ALJ followed the five step procedure. In her decision dated February 21, 2006, the ALJ found that plaintiff (1) had not engaged in substantial gainful activity since the onset date of January 12, 2004; (2) suffered from status post gunshot

wound to the face; (3) did not have an impairment that meets or equals one of the listed impairments listed in Appendix 1, subpart P, Regulation No. 4; (4) had the residual functional capacity to perform simple "one step/two step" job tasks at all relevant times to the decision and was able to return to his past relevant work as a machine operator; and (5) considering plaintiff's younger age, education, work experience and residual functional capacity, there are a significant number of jobs in the national economy that he could perform. (Tr. 16-20)

Plaintiff alleges that the ALJ did not have substantial evidence to support her finding that plaintiff's back pain was not a severe impairment. Plaintiff argues that his back impairment both singularly and in combination with the residual effects of his gunshot wound to the face impose more than miminmal restrictions on the plaintiff's ability to engage in work activities. Plaintiff points to the MRI dated April 4, 2006 and Dr. Khatib's opinion as expressed in the Physical Capacities Evavaluation dated May 6, 2006 as evidence to support his subjective claims of back pain.

Second, plaintiff contends that the ALJ failed to give appropriate weight to plaintiff's treating physician, Dr. Khatib's opinion. Further, plaintiff argues that the ALJ failed to properly evaluate plaintiff's credibility regarding her symptoms and the limitations they cause. I find that there is substantial evidence to support the ALJ decision. The ALJ considered the evidence regarding plaintiff's alleged back condition. The two times that

Perez was treated at the Kaleida Clinic in 2005 complaining of chronic back and head pain, the medical notes indicated that the clinical findings were not consistent with a musculo-skeletal injury and the treating physician suggested that there was "symptom magnification." (Tr. 120, 124) The examination revealed that Perez had a stable, symmetric gait, a full range of motion and x-rays showed no disc injury. (Tr. 123-124) Treatment records show that there was no palpable spasm of the back and straight leg raising was negative bilaterally. (Tr. 119, 121) The medical records show that x-rays of plaintiff's lumbosacral spine showed no fracture. (Tr. 147) Further, the MRI of plaintiff's back fails to support plaintiff's allegation of disability. It identified no fractures and only found dislocations with "mild bilateral posterolateral disc bulges" and "minimal posterolateral disc bulges bilaterally" at L3-4. (Tr. 169) Finally, plaintiff's back symptoms resolved with conservative treatment. In November, 2005, plaintiff was discharged from physical therapy after a marked decrease in low back pain symptoms. (Tr. 154)

Plaintiff argues that the ALJ should have found plaintiff disabled based on the treating source opinion of Dr. Khatib. The opinions of treating sources are entitled to controlling weight if they are well supported and not contradicted. 20 C.F.R. §§ 404.1527 and 416.927. However, the ALJ is not required to give controlling weight to treating physicians' opinions as to whether the claimant is disabled or unable to work. 20 C.F.R. § 404.1527(e)(1) and (3).

Here, the report of Dr. Khatib was not available to the ALJ at the time of her decision. However, the Appeal's Council considered this evidence and properly found that it did not provide a basis for changing the ALJ decision. (Tr. 4) First, Dr. Khatib's May 16, 2006 assessment was not material to the time period adjudicated by the ALJ. In order for the evidence to be material, it must be relevant to plaintiff's condition during the period for which benefits were denied. Lisa v. Secretary of Department of Health and Human Services, 940 F.2d 40, 43 (2d Cir. 1991) The ALJ adjudicated plaintiff's claim through February 21, 2006. Dr. Khatib's assessment was dated May 16, 2006. Because the assessment was created after the ALJ decision, it was not relevant to the time period adjudicated by the ALJ and is not material to the claim.

Even had Dr. Khatib's assessment been part of the ALJ record, it would not have altered the finding that plaintiff was not disabled. Although Dr. Khatib indicated that plaintiff could sit only one half hour at a time, could not stand or walk at all in an eight hour work day, could never lift or carry any amount of weight, could not bend, squat, crawl, climb, reach nor use feet for repetitive movements and that plaintiff "cannot work due to back injury and psychological problems," he admitted that "all information obtained through patient interview and his answers were used in filling the form." (Tr. 172) Dr. Khatib did not rely on objective medical evidence nor on his examination, rather he relied on the plaintiff's subjective complaints.

The ALJ found plaintiff's complaints of disabling pain to not be credible. (Tr. Tr. 18, 19) In order to establish disability, there must be an underlying physical or mental impairment, demonstrable by medically acceptable clinical and laboratory diagnostic techniques, which could reasonably be expected to produce the symptoms alleged. 20 C.F.R. § 416.929(b) When a medically determinable impairment exists, objective medical evidence must be considered in determining whether disability exists, whenever such evidence is available. 20 C.F.R. § 419.929(c)(2). It is well within the Commissioner's discretion to evaluate the credibility of plaintiff's testimony and render an independent judgment in light of the medical findings, and other evidence. Mimms v. Secretary, 750 F.2d 180, 186 (2d Cir. 1984)

The ALJ's conclusion that plaintiff's allegation of disability is not credible is supported by substantial evidence in the record. In assessing plaintiff's allegations of constant pain, the ALJ took note of the medical records which would suggest "less intense and less persistent symptomatology" as well as comments from plaintiff's treating sources regarding symptom magnification. (Tr. 19, 120, 124) In addition, the ALJ noted that claimant received conservative treatment for low back pain. (Tr. 19) Finally, plaintiff's allegation of disability was inconsistent with his activities. Plaintiff washed dishes, prepared light food and had a driver's license and drove. (Tr. 190, 191, 66)

CONCLUSION

I find substantial evidence in the record to support the ALJ's conclusion that plaintiff is not disabled within the meaning of the Social Security Act.  Accordingly, the decision of the Commissioner denying plaintiff's disability claim is affirmed, the plaintiff's motion for summary judgment is denied, the defendant's motion for judgment on the pleadings is granted and the complaint is dismissed.

ALL OF THE ABOVE IS SO ORDERED.

                                        S/Michael A. Telesca

                                   _____
                                     MICHAEL A. TELESCA
                                  United States District Judge

DATED:    Rochester, New York
            December 8, 2009